Robert S. Arns, State Bar No. 65071
rsa@arnslaw.com
Jonathan E. Davis, State Bar No. 191346
jed@arnslaw.com
Kevin M. Osborne, State Bar No. 261367
kmo@arnslaw.com
Julie C. Erickson, State Bar No. 293111
jce@arnslaw.com
THE ARNS LAW FIRM
A Professional Corporation
515 Folsom St., 3rd Floor
San Francisco, CA 94109
Tel: (415) 495-7800
Fax: (415) 495-7888

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ROSALENE MULLINS, and SHARON STEWART, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>HP INC.; AND DOES 1 THROUGH 100, inclusive,<br><br>Defendants. | CLASS ACTION COMPLAINT [F.R.C.P. 23] FOR DAMAGES AND DEMAND FOR JURY TRIAL<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br>1. Violation of the UCL – Unlawful Business Acts and Practices (Cal. Bus. & Prof. Code, §§ 17200, *et seq*.)<br>2. Violation of the UCL – Unfair Business Acts and Practices (Cal. Bus. & Prof. Code, §§ 17200, *et seq*.)<br>3. Violation of the UCL – Fraudulent Business Acts and Practices (Cal. Bus. & Prof. Code, §§ 17200, *et seq*.)<br>4. Violation of the False Advertising Law (Cal. Bus. & Prof. Code, §§ 17500 *et seq*.)<br>5. Unjust Enrichment |

**INTRODUCTION**

Plaintiffs ROSALENE MULLINS ("Mullins") and SHARON STEWART ("Stewart") (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action against Defendants HP Inc. ("HP") and Does 1 through 100 (collectively "Defendants"), and allege, upon information and belief, except as to their own actions, the investigation of their counsel, and the facts that are a matter of public record, as follows:

1.      Plaintiffs bring this action to obtain damages and restitution, as well as declaratory, injunctive, and other relief, individually and on behalf of the proposed class defined below ("Class"), against HP, which Plaintiffs contend intentionally installed firmware on certain wirelessly-enabled HP printers that caused the printers to fail when being used with non-HP brand ink cartridges.

2.      As alleged herein, Plaintiffs are the purchasers of "all-in-one" HP printers and devices offered by and sold through Defendants. On or around September 13, 2016, these printers ceased to function.  The malfunction of the printers was caused by firmware that HP wirelessly installed on these printers in March 2016, without notice or consent from their owners.  The firmware operated to disable the printers if ink cartridges manufactured by an HP competitor were being used.  In such cases, error messages appeared on the printer and/or the device sending the print job to the printer stating that the printer error was due to a damaged or failed ink cartridge.  The error messages instructed the users to replace the non-HP ink cartridges with new cartridges.  Only if the cartridges were replaced with ones manufactured by HP did the printers resume operation.

3.      HP intentionally installed this firmware in order to force consumers to purchase HP's more expensive ink cartridges as opposed to the less expensive ink cartridges manufactured by its competitors. This scheme was intended to and did cause HP to profit in the form of ink cartridge sales and servicing charges.

4.      Defendants misrepresented to Plaintiffs that the printers were compatible with non-HP ink cartridges.  Plaintiffs were induced to purchase the printers and/or ink cartridges from Defendants based on these misrepresentations regarding the functionality and quality of the printers. Defendants also intentionally misrepresented that the printers failed because the ink cartridges being used were damaged or had failed.

5. Plaintiffs assert claims for various state law violations pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a putative class of similarly situated consumers who own an affected printer, claims for unlawful, unfair, and fraudulent business practices; false advertising; and unjust enrichment.

6. Plaintiffs seek restitution, equitable relief, costs and expenses of litigation, including attorneys' fees, and all additional and further relief that may be available and that the Court may deem appropriate and just under all of the circumstances.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and 1453(b). This action is a class action as defined by 28 U.S.C. §1332(d)(1)(B). The complaint is brought as a "Class Action" and Plaintiffs bring it "individually and on behalf of the proposed classes." As alleged herein, HP is a Delaware corporation with its principal place of business in Palo Alto, California. Plaintiff Mullins is a resident of Washington State, Plaintiff Stewart is a resident of Missouri, and the proposed class consists of thousands of consumers nationwide. The proposed class includes more than 100 members, thus satisfying 28 U.S.C. § 1332(d)(5). Further, because Plaintiffs are from states other than California, and HP is a citizen of both Delaware and California, the diversity requirement of 28 U.S.C. § 1332(d)(2)(A) is met. None of the exceptions to CAFA jurisdiction are met here. The "home-state" and "local-controversy" exceptions do not apply because less than two thirds of the proposed class is from California. The other exceptions are inapplicable here. Finally, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, thus satisfying 28 U.S.C. § 1332(d)(2).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, *inter alia*, Defendants are conducting unlawful, unfair and deceptive business practices in the County of Santa Clara. Defendant HP is headquartered in Palo Alto, California and engages and performs business activities in and throughout Santa Clara County. HP executives and employees devised and carried out the scheme underlying these claims at HP's headquarters.

## INTRADISTRICT ASSIGNMENT

9. Assignment to the San Jose Division is proper under Local Rule 3-2(c), because a substantial part of the conduct at issue in this case occurred in Santa Clara County.

## PARTIES

10. Plaintiff Mullins is, and at all times relevant herein was, a resident of Kent, Washington. Mullins purchased an HP OfficeJet Pro 8600 Premium printer from Defendant HP in or around May 2014. Mullins' printer subsequently stopped working when she attempted to use her printer with non-HP ink.

11. Plaintiff Stewart is, and at all times relevant herein, was a resident of St. Louis, Missouri. Stewart owns an HP OfficeJet Pro 8610. Stewart's printer stopped working when she attempted to use her printer using non-HP ink.

12. Defendant HP Inc. is a Delaware corporation with its principal place of business located in Palo Alto, California. HP maintains substantial ongoing business operations throughout the United States, including Santa Clara County, and is in the business of manufacturing and selling home and office printers and ink.

13. The true names and capacities of DOES 1 through 100, inclusive, are unknown to Plaintiffs who sue such Defendants by use of such fictitious names. Plaintiffs will amend this complaint to add the true names when they are ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is legally responsible for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by their conduct.

## FACTUAL ALLEGATIONS

### Plaintiff Rosalene Mullins

14. On or around May 31, 2014, Ms. Mullins purchased an HP OfficeJet Pro 8600 Premium printer for $199. Ms. Mullins used the HP ink cartridges that came with her printer until they ran out of ink. On or around June 18, 2014, Ms. Mullins purchased ink cartridges manufactured by LD Products, an HP competitor. The third-party ink cartridges functioned properly in her printer, with certain exceptions.

15. Ms. Mullins continued to purchase non-HP ink from 2014 through approximately mid-2016. Ms. Mullins purchased non-HP ink because she believed the quality of ink to be the same as HP ink, only much less expensive.

16. When Ms. Mullins purchased her HP printer, she believed that it was compatible with non-HP ink. It was important to her that the printer work with non-HP ink because she intended

to purchase and use the less expensive non-HP ink. Prior to purchasing the printer, she researched and confirmed based on HP's representations about the printer that it was compatible with non-HP ink.

17. Ms. Mullins uses her HP printer for both personal and business needs.

18. Starting at the beginning of November 2016, Ms. Mullins' HP printer stopped working. The printer sent an error message to her computer stating that the ink cartridges were damaged or had failed. The error message instructed Ms. Mullins to remove the cartridges and replace them with new ones. The error message provided her only two options: Click a button to cancel the print job or click a button to "Shop Online" for a "Genuine HP replacement cartridge." Ms. Mullins clicked on the "Shop Online" button, which took her to a website selling only HP ink cartridges.

19. Ms. Mullins replaced the ink cartridges with brand new non-HP ink cartridges, but the printer still did not work and displayed the same error message.

20. The printer malfunction has caused Ms. Mullins to spend time and money to meet her printing needs.

21. HP's actions were the direct and proximate cause of the failure of Ms. Mullins' HP printer. But for HP's actions to disable it, Ms. Mullins' HP printer would not have malfunctioned.

**Plaintiff Sharon Stewart**

22. Plaintiff Stewart has owned an HP Office Jet Pro 8610 since approximately September 2015.

23. Ms. Stewart used the HP ink cartridges that came with her printer until they ran out of ink in or around September 2016, after which Ms. Stewart purchased ink cartridges manufactured by OfficeMax, an HP competitor. The third-party ink cartridges functioned properly in her printer.

24. Ms. Stewart purchased non-HP ink because she believed the quality of ink to be the same as HP ink, only much less expensive.

25. Ms. Stewart uses her HP printer for personal needs.

26. In or around September 2016, shortly after Ms. Stewart started using the third-party ink, Ms. Stewart's HP printer stopped working. The printer displayed an error message saying that the ink cartridges were damaged or had failed. The error message instructed Ms. Stewart to

remove the cartridges and replace them with HP ink cartridges.

27. After receiving the error message, Ms. Stewart purchased new HP ink cartridges and installed them in her printer, replacing the non-HP ink cartridges. After Ms. Stewart replaced the non-HP ink cartridges with HP ink cartridges, her printer worked without error or malfunction.

28. The printer malfunction has caused Ms. Stewart to spend time and money to meet her printing needs.

29. HP's actions were the direct and proximate cause of the failure of Ms. Stewart's HP printer. But for HP's actions to disable it, Ms. Stewart's HP printer would not have malfunctioned.

## Common Factual Allegations

30. Defendant HP manufactures and sells printers, ink cartridges, and other printing services, along with computers, tablets, and other electronics. Sales of HP printers and ink cartridges make up almost half of HP's business.

31. HP's printers represent half or more of the market for personal printers in the U.S. HP sells its printers at a relatively low price with the design of making money when the purchasers need additional ink and buy HP-brand ink cartridges. HP obtains a large portion of its profits from the sale of its ink cartridges used in its printers.

32. HP ink cartridges are sold for a premium price. This has led to the creation of a market for less expensive ink cartridges compatible with HP printers. Competitor ink cartridge manufacturers offer alternatives to HP's ink cartridges in the form of less expensive ink cartridges that work in HP printers.

33. Owners of HP printers often purchase these non-HP ink cartridges in order to save money.

34. Microchip technology allows HP to identify whether HP printers are using HP or non-HP cartridges. Additionally, HP is able to communicate with these printers after they have been sold because all of the subject printers connect to the Internet. HP uses this communication line with its printers to, among other things, update the printers' firmware. (Firmware is a type of software programmed into an electronic device that provides control, monitoring, and data manipulation.)

35. The printers at issue here are those HP printers and "all-in-one" devices, which print, copy, fax, and/or scan, in the following product series (collectively, "Subject Printers"):

    a. OfficeJet 6220 series;

    b.  OfficeJet Pro 6230 series;

    c.  OfficeJet Pro 6810 series;

    d.  OfficeJet Pro 6820 series;

    e.  OfficeJet Pro 6830 series;

    f.  OfficeJet 8600 series; and

    g.  OfficeJet Pro X series.

36. Starting around September 13, 2016, thousands of users of the Subject Printers began receiving error messages on their printers when trying to print using non-HP branded ink cartridges. The printers would not perform print functions.

37. The following image shows one such error message received by Plaintiff Mullins:



38. The malfunction of the Subject Printers did not result from any defect in or issue with the non-HP ink cartridges. Contrary to the HP error message, the ink cartridges were neither damaged nor defective.

39. The printers remained inoperable as long as they were loaded with non-HP ink. Only where the non-HP ink cartridges were replaced with HP-brand ink cartridges did the printers resume printing functions.

40. HP purposely caused the Subject Printers to fail if they were using non-HP ink.

41. In or around March of 2016, HP wirelessly installed a firmware update into the Subject Printers without notice to the users. Although it was installed in or around March 2016, the

update was programmed to lay dormant and not come into effect until September 13, 2016 so as to maximize the number of printers affected by the update.

42. The firmware update operated by displaying the error messages and disabling the Subject Printers when non-HP ink cartridges were detected in them. HP installed this firmware update in order to increase sales of HP's more expensive cartridges and to reduce its competitors' market share. By doing so, HP acted to minimize competition from more affordable ink cartridges on the market. HP carried out this scheme in order to restrict its customers' buying choices, induce them to purchase HP products, and protect HP's revenue stream derived from the sales of its ink cartridges.

43. The Subject Printers were all compromised by the firmware update. In addition to the above-listed series numbers, there may be additional printers that were affected by the firmware update.

44. After the firmware update went into effect in September 2016, many people and small ink cartridge retailers complained.

45. In the midst of the scandal, on September 28, 2016, HP Chief Operating Office Jon Flaxman issued a statement admitting to the firmware update, stating that "the update included a dynamic security feature that prevented some untested third-party cartridges that use cloned security chips from working, even if they had previously functioned." Mr. Flaxman also apologized to HP customers for the firmware update, stating "We should have done a better job of communicating about the authentication procedure to customers, and we apologize." That statement is published on HP's website at the following URL: https://newsblog.ext.hp.com/t5/HP-newsroom-blog/Dedicated-to-the-best-printing-experience/ba-p/451 (last visited January 9, 2017).

46. HP includes an express warranty with the Subject Printers that envisions the use of non-HP ink cartridges. The warranty provides: "The use of a non-HP or refilled cartridge does not affect either the HP Limited Warranty to the end-user customer or any HP support contract with the end-user customer for the printer. However, if printer or print head failure or damage is attributable to the use of a non-HP or refilled cartridge, HP will charge its standard time and materials charges to service the printer for the particular failure or damage or for the cost to replace the print head."

47. HP's firmware that caused the Subject Printers to fail caused HP to profit from servicing products that had failed by HP's design, as well as by increased profits from sales of HP ink cartridges.

## CLASS ACTION ALLEGATIONS

48. Plaintiffs Mullins and Stewart bring the following causes of action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and the following Class:

> All persons in the United States who own an HP printer or device in any of the following categories: OfficeJet 6220 series; OfficeJet Pro 6230 series; OfficeJet Pro 6810 series; OfficeJet Pro 6820 series; OfficeJet Pro 6830 series; OfficeJet 8600 series; and OfficeJet Pro X series.

49. Plaintiffs reserve the right to amend this Class definition if discovery and/or further investigation demonstrate that the Class should be expanded or otherwise modified.

50. The Class consists of thousands of owners of Subject Printers. As such, the members of the Class are so numerous that joinder of all members would be impracticable.

51. There are questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including:

    a. Whether Defendants' conduct constitutes unlawful, unfair, or fraudulent business practices in violation of California's Unfair Competition Law, California Business & Professions Code, §§ 17200, *et seq.* ("UCL");

    b. Whether Defendants falsely advertised the Subject Printers that Plaintiffs purchased in violation of California's False Advertising Law, California Business & Professions Code, §§ 17500, *et seq.* ("FAL");

    c. Whether Defendants were unjustly enriched as a result of their conduct;

    d. Whether Defendants' conduct otherwise violates California law; and

    e. Whether, as a result of Defendants' conduct, Plaintiffs are entitled to damages, restitution, equitable relief and/or other damages and relief, and, if so, the amount and nature of such relief.

52. Plaintiffs are members of the Class who suffered damages as a result of Defendants' conduct and actions alleged herein.

53. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs have no

interests antagonistic to those of the Class and are not subject to any unique defenses.

54. Plaintiffs will fairly and adequately represent and protect the interests of all members of the Class and have retained attorneys experienced in class action and complex litigation.

55. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

56. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons:

    a. It is economically impractical for members of the Class to prosecute individual actions;

    b. The Class is readily definable;

    c. Prosecution as a class action will eliminate the possibility of repetitious litigation; and

    d. A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

57. Plaintiffs do not anticipate any difficulty in the management of this litigation.

## FIRST CAUSE OF ACTION
### Violation of the UCL – Unlawful Business Acts and Practices
### (Cal. Bus. & Prof. Code, §§ 17200, *et seq*.)

58. Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

59. California Business & Professions Code §§ 17200 *et seq*. prohibits acts of "unfair competition" which is defined by Business & Professions Code § 17200 as including "any unlawful, unfair or fraudulent business act or practice." Defendants' conduct, as described above and herein, constitutes unlawful business acts and practices.

60. Defendants' conduct detailed herein resulted from policies that HP contrived, ratified, and implemented in California.

61. Defendants have violated and continue to violate Business & Professions Code § 17200's prohibition against engaging in "unlawful" business acts or practices by, *inter alia*, manipulating the Subject Printers so as to cause them to fail when non-HP ink is being used. This conduct violates Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, because it constitutes an unlawful

attempt by Defendants to monopolize the market for ink cartridges compatible with the Subject Printers. This illegal attempt at monopolization has caused and will continue to cause injury to Plaintiffs by depriving them of a competitive marketplace for ink cartridges compatible with their printers. By implementing the firmware update, Defendants intended to eliminate the marketplace of alternative ink cartridges that work with the Subject printers, thereby forcing Plaintiffs and the Class members to buy HP's ink cartridges. The injury suffered by Plaintiffs is the type of harm the Sherman Act is intended to prevent. Plaintiffs have suffered direct harm as they are direct purchasers and consumers of the ink cartridges.

62. HP developed and implemented a material change to printers it sold, with the intent and effect of stifling free and open competition in the market for printer ink cartridges. HP intentionally caused HP printers to become inoperable when cartridges manufactured by HP competitors were detected.

63. Defendants also conditioned the functionality of the Subject Printers on the owners' purchases of HP products in another product market. Defendants did so despite HP's warranty that explicitly envisions that printer owners may, will, and do replace empty ink cartridges with ones made or sold by a third party.

64. Defendants rendered previously sold printers inoperable without prior notice to their owners. The printers remain inoperable as a result of Defendants' conduct unless their owners purchase and install HP ink cartridges.

65. The purpose of Defendants' conduct was to increase and maintain its share of the printer ink cartridge market through means other than competitive factors such as pricing and product quality.

66. Plaintiffs suffered concrete and identifiable economic injuries as a consequence of Defendants' unlawful conduct, including but not limited to out-of-pocket expenses for ink cartridges and replacement printers, as well as expenses for the purchase of a printer that was a different or lesser product than that for which they bargained.

67. All of Defendant HP's unlawful conduct occurred in the course of HP's business and was part of a generalized course of conduct. HP's decision to disable the Subject Printers originated in HP's operations, sales, marketing, and/or other divisions within California.

68. As a result of Defendants' conduct, Plaintiffs are entitled to all monetary and other

damages permitted under the law, including, but not limited to full restitution of all monies paid and disgorgement of the profits derived from Defendants' unlawful business practices.

69. Plaintiffs also seek an order enjoining Defendants from continuing their unlawful business practices and from such future conduct and requiring Defendants to reverse their unlawful disablement of the Subject Printers.

**SECOND CAUSE OF ACTION**
**Violation of the UCL – Unfair Business Acts and Practices**
**(Cal. Bus. & Prof. Code, §§ 17200, *et seq*.)**

70. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

71. Defendants' acts and practices, as described above, constitute unfair business practices within the meaning of Business & Professions Code, §§ 17200, *et seq*.

72. Defendants' conduct detailed herein resulted from policies that HP contrived, ratified, and implemented in California.

73. Plaintiffs and other members of the Class suffered a substantial injury in fact resulting in the loss of money or property by virtue of Defendants' conduct.

74. Defendants' conduct does not benefit consumers or competition. Indeed, the injury to consumers and competition is substantial. Defendants' conduct also significantly threatens or harms competition.

75. Plaintiffs and Class members could not have reasonably avoided the injury each of them suffered. Plaintiffs and Class members did not know, and had no reasonable means of learning, that HP would unilaterally disable their printers upon detecting non-HP ink cartridges.

76. The gravity of the consequences of Defendants' conduct as described above outweighs any justification, motive or reason therefore, is immoral, unethical, oppressive, unscrupulous, and offends the public policy established by the State of California, which, among other things, seeks to ensure fair competition and business practices and to protect the reasonable expectations of consumers concerning the nature, extent, and quality of products and services.

77. Further, Defendants' conduct threatens an incipient violation of an antitrust law, namely, Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, violates the policy or spirit of that law because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.

78. The purpose of Defendants' conduct was to increase and maintain HP's share of the printer ink cartridge market through means other than competitive factors such as pricing and product quality. By forcing Plaintiffs and the Class members to purchase only HP ink cartridges, Defendants have gained an unfair advantage in the marketplace and has hindered competition for third-party ink cartridges.

79. As a result, the non-HP ink cartridges that Plaintiffs and Class members previously purchased have been rendered worthless, and Plaintiffs and the Class are forced to pay significantly more money for ink cartridges manufactured by HP.  Additionally, Defendants are free to continue to raise the prices of their ink cartridges without competition.  Defendants' conduct tends to harm competition in the market for HP-compatible ink cartridges by decreasing or eliminating competition in the marketplace due to a false and contrived firmware restriction, which offers no countervailing benefit to the market.  HP's statement that the firmware was intended to prevent its customers from using unreliable third party products is a thinly veiled subterfuge to eliminate competition by third party manufacturers and deceive consumers. This conduct constitutes an attempt to monopolize, a violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

80. Defendants' act of unfair competition and misrepresentations injured and misled Plaintiffs and the Class and will continue to injure and deceive the consuming public in the future.

81. Defendants' conduct therefore constitutes unfair and deceptive practices in violation of Business & Professions Code, §§ 17200, *et seq*.

82. All of Defendant HP's unlawful conduct occurred in the course of HP's business and was part of a generalized course of conduct.  HP's decision to disable the Subject Printers originated in HP's operations, sales, marketing, and/or other divisions within California.

83. Plaintiffs suffered concrete and identifiable economic injuries as a consequence of Defendants' unfair conduct, including but not limited to out-of-pocket expenses for ink cartridges and replacement printers, as well as expenses for the purchase of a printer that was a different or lesser product than that for which they bargained.

84. As a result of Defendants' conduct, Plaintiffs are entitled to an award of restitution, disgorgement, injunctive relief and all other relief allowed under the UCL, including interest and attorneys' fees pursuant to, *inter alia*, Cal. Code of Civ. Proc. § 1021.5.

85.  Plaintiffs also seek an order enjoining Defendants from continuing their unfair business practices and from such future conduct and requiring Defendants to reverse their unfair disablement of the Subject Printers.

### THIRD CAUSE OF ACTION
### Violation of the UCL – Fraudulent Business Acts and Practices
### (Cal. Bus. & Prof. Code, §§ 17200, *et seq*.)

86.  Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

87.  Defendants' conduct as set forth herein constitutes fraudulent business practices under Business & Professions Code, §§ 17200, *et seq*.

88.  Defendants' conduct detailed herein resulted from policies that HP contrived, ratified, and implemented in California.

89.  As described herein, Defendants made uniform communications to Plaintiffs regarding the Subject Printers that were untrue, misleading, or deceptive.  These statements or representations related to the features and functions of the Subject Printers, specifically their compatibility with non-HP ink cartridges, and were or may have been significant to Plaintiffs or any potential purchaser of the Subject Printers.  When Plaintiffs selected their HP printers, they believed that they were compatible with non-HP ink. It was important to Plaintiffs that the printers work with non-HP ink because Plaintiffs intended to purchase and use the less expensive non-HP ink.  Prior to purchasing her HP printer, Plaintiff Mullins researched and confirmed, based on representations from HP, that the printer was compatible with non-HP ink. Additionally, for a time, Plaintiffs' printers did work when using non-HP ink. These communications and actions by Defendants were misleading and deceptive, because they failed to disclose that HP could and intended to install firmware into said printers, without notice or consent, that would disable this compatibility.

90.  Defendants also made misleading statements in the form of error messages displayed on the Subject Printers and/or the devices sending print jobs to the Subject Printers.  These messages falsely stated that the owners' ink cartridges were damaged or had failed, when in fact there was nothing wrong with the cartridges.  The messages also directed the owners to replace the non-HP cartridges with new cartridges, despite the fact that there was nothing wrong with said cartridges.  The misleading messages implied that the failure of the printers was due to defective or empty

ink cartridges rather than the anti-competitive firmware update unilaterally implemented by HP.

91.  The communications described herein were made with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

92.  Defendants' misleading and fraudulent communications were and are likely to deceive reasonable consumers, leading them to believe they are purchasing or have purchased a printer that was compatible with and would continue to be compatible with non-HP ink when, in fact, the Subject Printers do not operate properly when being used with non-HP ink. The misleading and fraudulent communications in the form of HP's error messages also were and are likely to deceive reasonable consumers to believe their non-HP ink cartridges are faulty or damaged, when in fact, the error messages were caused by HP's firmware update that it installed on the Subject Printers without notice to or consent from the owners.

93.  Plaintiffs relied on and were deceived by the uniform and deceptive communications distributed by Defendants regarding the nature of the Subject Printers. Plaintiffs also relied on and were deceived by Defendants' uniform and misleading error messages regarding the cause of their printers' failures.

94.  These communications regarded a material aspect of and were a substantial factor leading to the transactions between Plaintiffs and Defendant, including Plaintiffs' decisions to purchase the Subject Printers and/or ink cartridges.

95.  Defendants' conduct caused Plaintiffs to pay more for their printers or receive a different or lesser product than that for which they bargained. Defendants' conduct also caused Plaintiffs to pay more for replacement HP ink cartridges than they would have paid for non-HP ink cartridges. Absent Defendants' misleading and fraudulent conduct, Plaintiffs would not have purchased the Subject Printer and/or ink cartridges.

96.  The purpose of Defendants' conduct was to increase and maintain HP's share of the printer ink cartridge market through means other than competitive factors such as pricing and product quality.

97.  Plaintiffs suffered concrete and identifiable economic injuries as a consequence of Defendants' fraudulent conduct, including but not limited to out-of-pocket expenses for ink cartridges and replacement printers, as well as expenses for the purchase of a printer that was a different or lesser product than that for which they bargained.

98. All of Defendant HP's fraudulent conduct occurred in the course of HP's business and was part of a generalized course of conduct. HP's decision to disable the Subject Printers and display the error messages originated in HP's operations, sales, marketing, and/or other divisions within California.

99. As a result of Defendants' conduct, Plaintiffs are entitled to an award of restitution, disgorgement, injunctive relief and all other relief allowed under the UCL, including interest and attorneys' fees pursuant to, *inter alia*, Cal. Code of Civ. Proc. § 1021.5.

100. Plaintiffs also seek an order enjoining Defendants from continuing their fraudulent business practices and from such future conduct and requiring Defendants to reverse their fraudulent disablement of the Subject Printers.

## FOURTH CAUSE OF ACTION
### Violation of the False Advertising Law
### (Cal. Bus. & Prof. Code, §§ 17500, *et seq.*)

101. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

102. Defendants' conduct as set forth herein constitutes false advertising under Business & Professions Code, §§ 17500, *et seq*.

103. Defendants' conduct detailed herein resulted from policies that HP contrived, ratified, and implemented in California. The communications described herein were made or disseminated or caused to be made or disseminated from California before the public of this state and all other states.

104. As described herein, Defendants made uniform false, misleading, deceptive, or fraudulent communications to Plaintiffs regarding the features and functions of the Subject Printers, specifically that the Subject Printers were compatible with non-HP ink cartridges.

105. These representations were or may have been significant to Plaintiffs or any potential purchaser of the Subject Printers. When Plaintiffs selected their HP printers, they believed that they were compatible with non-HP ink. It was important to Plaintiffs that the printers work with non-HP ink because Plaintiffs intended to purchase and use the less expensive non-HP ink. Prior to purchasing her HP printer, Plaintiff Mullins researched and confirmed, based on representations from HP, that the printer was compatible with non-HP ink. Additionally, for a time, Plaintiffs' printers did work when using non-HP ink. These communications and actions by

Defendants were misleading and deceptive, because they failed to disclose that HP could and intended to install firmware into said printers, without notice or consent, that would disable this compatibility.

106. At the time Defendants made the communications in question, Defendants knew or should have known that their communications to Plaintiffs regarding the Subject Printers were false, misleading, deceptive, or fraudulent.

107. Defendants' communications have been and continue to be likely to deceive reasonable consumers, leading them to believe they are purchasing or have purchased a printer that is compatible with non-HP ink cartridges when, in fact, the printers fail when being used with non-HP ink.

108. Defendants' communications regarded a material aspect of and a substantial factor leading to the transactions between Plaintiffs and Defendant, including Plaintiffs' decisions to purchase the Subject Printers.

109. Plaintiffs were induced to alter their position to their detriment by Defendants' false, misleading, deceptive, or fraudulent communications regarding the features and functions of the Subject Printers.

110. Defendants' conduct caused Plaintiffs to pay more for their printers or receive a different or lesser product than that for which they bargained. Absent Defendants' misleading and fraudulent conduct, Plaintiffs would not have purchased the printers.

111. Plaintiffs suffered concrete and identifiable economic injuries as a consequence of Defendants' misleading and fraudulent conduct, including but not limited to out-of-pocket expenses for ink cartridges and replacement printers, as well as expenses for the purchase of a printer that was a different or lesser product than that for which they bargained.

112. All of Defendant HP's false and deceptive communications were made or disseminated in the course of HP's business and was part of a generalized course of conduct. HP's decision to disseminate false and misleading communications regarding the features and functions of the Subject Printers originated in HP's operations, sales, marketing, and/or other divisions within California.

113. As a result of Defendants' conduct, Plaintiffs are entitled to an award of restitution, disgorgement, injunctive relief and all other relief allowed under the UCL, including interest and

attorneys' fees pursuant to, *inter alia*, Cal. Code of Civ. Proc. § 1021.5.

114. Plaintiffs also seek an order enjoining Defendants from continuing their false and deceptive communications and from such future conduct.

## FIFTH CAUSE OF ACTION
### Unjust Enrichment

115. Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

116. Plaintiffs and the Class have conferred a benefit upon Defendants by buying HP printers and ink as well as paying other amounts that benefitted Defendants.

117. Defendants have wrongfully received and retained money from Plaintiffs and the Class as a result of Defendants' actions in disabling the Subject Printers without prior knowledge or approval by Plaintiffs and the Class and in attempting to compete unfairly in the marketplace for business and consumer goods.

118. Defendants' scheme to disable printers using non-HP ink cartridges has caused Defendants to profit from sales of HP printers and ink cartridges and from service charges to Plaintiffs and the Class.

119. Defendants appreciate or have knowledge of said benefit.

120. Under principles of equity and good conscience, Defendants should not be permitted to retain money belonging to Plaintiffs and the Class that it unjustly received as a result of their actions.

121. Plaintiffs and the Class have suffered losses as a direct result of Defendants' conduct.

122. Plaintiffs, on their own behalf and on behalf of the Class, seek the imposition of a constructive trust on and restitution of the proceeds Defendants received as a result of their conduct described herein, as well as attorney's fees and costs pursuant to Cal. Civ. Proc. Code § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, pray for judgment against Defendants as follows:

A. For an order certifying this case as a class action and appointing Plaintiff Mullins and Plaintiff Stewart and their counsel to represent the Class;

B. For a declaratory judgment that the practices complained of herein are unlawful, unfair, and fraudulent under California state law;

C. For restitution and disgorgement pursuant to the California Business & Professions Code, and all other applicable laws and regulations;

D. For an order enjoining Defendants from continuing to engage in the conduct described herein and requiring Defendants to reverse their disablement of the Subject Printers;

E. For pre-judgment and post-judgment interest;

F. For an award of attorneys' fees, costs and expenses as authorized by applicable law; and

G. For such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action so triable.

_____
Robert S. Arns (SBN 65071)
Jonathan E. Davis (SBN 191346)
Julie C. Erickson (SBN 293111)
515 Folsom Street, Third Floor
San Francisco, CA 94105
Telephone: (415) 495-7800
Facsimile: (415) 495-7888